## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

REGINA K. HILL                    :
                                  :
v.                                :   Civil No. WMN-05-254
                                  :
BRUSH ENGINEERED MATERIALS,       :
INC. <u>et al.</u>               :

### <u>MEMORANDUM</u>

Before the Court are two concurrent motions: a Rule
12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction
filed by Defendant Brush Engineered Materials, Inc. (BEMI),
Paper No. 25, and a Rule 12(b)(6) Motion to Dismiss Count IV
filed by Defendants BEMI and Brush Wellman, Inc. (Brush),
Paper No. 26.  Through these motions, Defendants also seek
dismissal of Plaintiff's punitive damages claims and all
claims against BEMI.  For the reasons that follow, the Court
will grant Defendant BEMI's jurisdictional motion and grant
Defendants' partial motion to dismiss with leave to amend.
The Court will also dismiss Plaintiff's punitive damages
claims and all claims against BEMI.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Regina Hill alleges the following facts in her
Complaint.  From 1992 to 2004, she was employed as a dental
technician at the Roy-L Dental Lab in LaVale, Maryland.  While
there, she performed various tasks involving beryllium-
containing dental alloys, which produced respirable beryllium

dust.  In 2005, she was diagnosed with chronic beryllium disease.

Plaintiff does not dispute that Defendants BEMI and Brush are separate corporate entities and that BEMI has never manufactured or sold any form of beryllium.  Defendant BEMI is an Ohio-based holding company and Brush's parent company. Defendant Brush is a manufacturer of beryllium and beryllium-containing products.  Plaintiff alleges that Defendant Brush sold its products to Defendants Pentron Laboratory Technologies, LLC, (Pentron) and Jensen Industries, Inc. (Jensen) and that these entities supplied beryllium-containing products to Roy-L Dental Lab.

On January 28, 2005, Plaintiff filed suit against Defendants BEMI, Brush, Jensen, and Pentron.  Plaintiff claims that Defendants manufactured, assembled, or distributed beryllium-containing products used at Roy-L Dental Lab.  She claims workplace exposure to beryllium caused her to contract chronic beryllium disease.  Plaintiff's Complaint lists four causes of action: negligence (Count I), strict liability (Count II), breach of warranty (Count III), and fraudulent concealment and civil conspiracy (Count IV)[1].

---

[1]  Count IV encompasses a hodgepodge of claims, including a claim of fraudulent misrepresentation and what appear to be numerous claims of civil conspiracy.  To the extent that

## II.  DISCUSSION

### A.  Personal jurisdiction over BEMI

Defendant BEMI moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss all claims against it on the grounds that this Court lacks personal jurisdiction over it. To properly adjudicate a Rule 12(b)(2) personal jurisdiction challenge, the Fourth Circuit directs that "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted).  But when, as here, a district court addresses the motion "without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction," with the court taking "all disputed facts and reasonable inferences in favor of the plaintiff." Id.

A district court's exercise of personal jurisdiction over a nonresident defendant must comply with the requirements of both the forum state's long-arm statute and the Due Process

_____

Plaintiff seeks to amend her Complaint, the Court notes that severing the claims into separate counts should facilitate Plaintiff's necessary efforts to plead these claims with particularity and put Defendants on proper notice of their alleged misconduct.

Clause of the Fourteenth Amendment.  Id.  The Court of Appeals

of Maryland  has consistently held that Maryland's long-arm

statute expands the exercise of personal jurisdiction to the

limits set by the Due Process Clause of the Constitution.

E.g., Mohamed v. Michael, 370 A.2d 551, 553 (Md. 1977);

Camelback Ski Corporation v. Behning, 513 A.2d 874, 876 (Md.

1986).  Thus, the question becomes whether a court's exercise

of jurisdiction comports with the demands of due process.

Carefirst, 334 F.3d at 396-97.  Such demands are met if the

nonresident defendant has "minimum contacts" with the forum,

such that subjecting him to jurisdiction in that state "does

not offend traditional notions of fair play and substantial

justice."  Id. at 397 (quoting Int'l Shoe Co. v. Wash., 326

U.S. 310, 316 (1945)).

A court may exert either general or specific jurisdiction

over a nonresident defendant.  Helicopteros Nacionales de

Colom., S.A., v. Hall, 466 U.S. 408, 414-415 (1984).  Where

the suit does not arise out of the defendant's contacts with

the forum, a court may exert its general jurisdiction over the

defendant only if the defendant's activities in the state have

been "continuous and systematic."  Helicopteros, 466 U.S. at

415. If the suit arises out of defendant's contacts with the

state, the court must examine the circumstances of the case to

determine if it has specific jurisdiction over the defendant.
See id. at 414.  In determining whether specific jurisdiction
exists, the Fourth Circuit considers: "(1) the extent to which
the defendant has purposefully availed itself of the privilege
of conducting activities in the state; (2) whether the
plaintiffs' claims arise out of those activities directed at
the state; and (3) whether the exercise of personal
jurisdiction would be constitutionally reasonable."
Carefirst, 334 F.3d at 397 (quotations and citations omitted).

Here, the undisputed statements of fact show that BEMI's
activities in Maryland do not provide grounds for Maryland to
assert general jurisdiction.  BEMI's Vice President,
Treasurer and Secretary, Michael C. Hasychak, asserts by sworn
affidavit that BEMI has never maintained an office or
conducted business in Maryland, nor has it owned property or
maintained bank accounts in the state.  It has never had
employees, agents or representatives conduct business within
Maryland or visit the state for business purposes, nor has it
advertised or solicited business in the state.  Plaintiff does
not dispute these assertions.

Instead, Plaintiff contends that this Court should assert
specific jurisdiction over BEMI because it has negligently
designed and implemented environmental, health, and safety

policies that caused Plaintiff's injuries.[2]  She claims that
"BEMI established and enforced these policies for its
subsidiaries," thereby establishing its corporate liability.
Pl.'s Opp'n to BEMI's Mot. to Dismiss at 5.  To support this
contention, Plaintiff submits a document she dubs "Brush
Engineered Materials, Inc. Environmental Health & Safety
Policy," although the actual title reads "Brush Wellman
Engineered Materials Environmental, Health & Safety Policy."[3]
Compare Pl.'s Opp'n at 5 with id. Ex. 1.  Contrary to
Plaintiff's assertions, the names "Brush Engineered Materials,

---

[2]      In opposition to BEMI's motion, Plaintiff maintains
that BEMI's parent relationship to its subsidiary is not the
basis for this Court's jurisdiction over BEMI.  Pl.'s Opp'n to
BEMI's Mot. to Dismiss at 4 n.6 (stating emphatically that
BEMI's arguments against piercing the corporate veil "are a
red herring and should be disregarded"); but see id. stating,
at 2, "BEMI, as the corporate parent, dictates . . . policies
for all of its subsidiaries" and ibid. n.2, stating "BEMI by
and through its many subsidiaries, operates manufacturing and
other facilities . . . ."  Notwithstanding these somewhat
inconsistent statements, which seem to indicate that Plaintiff
does in fact want this Court to consider piercing BEMI's
corporate veil, Plaintiff insists that BEMI should be subject
to this Court's jurisdiction to answer for its "independent
tortious conduct" in Maryland.  Id.  The Court accepts
Plaintiff's assurance that piercing the corporate veil is not
at issue here and will not consider it further.  The Court's
inquiry is focused on BEMI's independent conduct.

[3]      Plaintiff cites this document as "prima facie
evidence" of BEMI's corporate liability on the case.  Id.

Inc." and "BEMI" do not appear anywhere on the exhibit.[4]

Aside from the erroneously attributed Brush policy, Plaintiff does not specifically allege any independent tortious conduct by BEMI.  Instead, she seeks to hold BEMI liable for the conduct of its subsidiaries, under a theory of liability that she has already abandoned.  See supra note 1. For example, she claims BEMI breached its duty "to design reasonably safe products, to communicate an adequate warning of the dangers involved in the use of their products, and to provide adequate instructions for product use to avoid or minimize dangers."  Pl.'s Opp'n to BEMI's Mot. at 5.  In making these assertions, however, Plaintiff does not contest BEMI's sworn statements that it "operates only as a holding company" that has never manufactured or sold beryllium products.

This Court does not have jurisdiction over BEMI in this matter.  The Fourth Circuit states "[a]lthough it is true that the plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in [her] favor,

---

[4]    BEMI addresses this discrepancy in the Affidavit of Michael D. Anderson, President of Brush Wellman Inc., in which he unequivocally states that the policy is that of his company, Brush, and not that of BEMI.  Def. BEMI's Reply Ex. 1 (Anderson Aff. ¶ 4).

district courts are not required to look solely to the plaintiff's proof in drawing those inferences." <u>Mylan Laboratories, Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 62 (4th Cir. 1993).  Plaintiff's only support for her argument that BEMI is subject to personal jurisdiction in Maryland is the Brush policy, which in fact undercuts her argument.  In light of BEMI's unchallenged affidavit and the fact that the policy is clearly that of Brush and not BEMI, Plaintiff's broad and unsupported claims do not even make a prima facie showing of personal jurisdiction.

Plaintiff requests leave to conduct jurisdictional discovery in the event this Court finds it lacks grounds to exercise personal jurisdiction over BEMI.  "District courts have broad discretion in [their] resolution of discovery problems."  <u>Mylan</u>, 2 F.3d at 64 (internal citations and quotations omitted).  The Fourth Circuit instructs that although "limited discovery may be warranted to explore jurisdictional facts in some cases," <u>id.</u>, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." <u>Carefirst</u>, 334 F.3d at

402 (internal citations and quotations omitted).[5]

Here, Plaintiff has offered nothing but erroneous or
conclusory assertions about BEMI's contacts with Maryland.
She has failed to proffer any further facts that, if proven,
would affect this Court's exercise of jurisdiction.  See ALS
Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707,
716 n.3 (4th Cir. 2002) (finding district court's denial of
jurisdictional discovery, due to Plaintiff's conclusory
allegations and failure to proffer further material facts, did
not abuse discretion).  Therefore, Plaintiff's request for
further jurisdictional discovery will be denied.

B.  Defendants' 12(b)(6) motion for failure to state a
claim

Defendants argue that Count IV of the Complaint fails to
state a claim upon which relief can be granted.  The Fourth
Circuit permits dismissal for failure to state a claim only if
"after accepting all well-pleaded allegations in the
plaintiff's complaint as true and drawing all reasonable
factual inferences from those facts in the plaintiff's favor,"

---

[5]     Plaintiff cites Combs v. Bakker to support her
discovery request.  886 F.2d 673, 676 (4th Cir. 1989).  Combs,
however, is inapposite because it simply addresses the
possibility of jurisdictional discovery when a court's
exercise of jurisdiction depends on disputed factual
questions.  Id.

it still appears certain that the plaintiff can prove no set
of facts in support of her claim which would entitle her to
relief.  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th
Cir. 1999).  Under the general pleading requirements of the
Federal Rules, a plaintiff's complaint ordinarily needs only
"a short and plain statement of the claim showing that the
pleader is entitled to relief."  FED. R. CIV. P. 8(b).  Certain
special matters, however, such as fraud and conspiracy, demand
more.  <u>See</u> FED. R. CIV. P. 9(b).  To preserve her claims in
Count IV, Plaintiff's allegations must satisfy both the
general pleading requirements of Rule 8 as well as the
heightened requirements of Rule 9.

     <u>1.  Fraudulent concealment and conspiracy under Rule
8</u>

    Plaintiff has satisfied the low threshold of Rule 8 by
generally alleging facts upon which valid claims for
fraudulent concealment and conspiracy could ultimately rest.


                <u>a.  Fraudulent concealment</u>

    Defendants argue dismissal is proper because Plaintiff's
claim of fraudulent concealment fails to allege all of the
essential elements of the tort.  Defs.' Mot. to Dismiss at 2.
Under Maryland law, the elements of fraudulent concealment

are: "1) that the defendant owed a duty to the plaintiff to disclose a material fact, 2) that the defendant failed to disclose that fact, 3) that the defendant intended to defraud or deceive the plaintiff, 4) that the plaintiff took action in justifiable reliance on the concealment, and 5) that the plaintiff suffered damages as a result of the defendant's concealment." Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C., 292 B.R. 536, 540 (D. Md. 2003) (citing, inter alia, Green v. H & R Block, 735 A.2d 1039, 1059 (Md. 1999)).

Defendant Brush maintains it owed Plaintiff no duty to disclose.  Under Maryland law, a duty to disclose can arise either "when one party is in a fiduciary or confidential relationship with the other," or "when one party makes a partial and fragmentary statement of fact." Estate of White ex rel. White v. R.J. Reynolds Tobacco Co., 109 F. Supp. 2d 424, 431 (D. Md. 2000) (internal citations and quotations omitted) (citing Brager v. Friedenwald, 97 A. 515 (Md. 1916)). Absent a special relationship, silence alone does not constitute fraud, but where "in addition to a party's silence, there is any statement, word, or act on his part, which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or

11

distraction of a party's attention from the real facts," he may be liable for fraudulent concealment.[6]  <u>Lubore v. RPM Associates, Inc.</u>, 674 A.2d 547, 556 (Md. App. 1996) (internal citations omitted).

Plaintiff alleges that Defendant Brush had a duty to disclose to her because it had partially disclosed facts. Among other charges, she asserts that Defendant Brush publicly stated that the 2 microgram standard was safe for all persons when it knew that this standard was not safe for those susceptible to beryllium.  Compl. ¶ 41.  Accepting this allegation as true and drawing all reasonable factual inferences in Plaintiff's favor, as is necessary in a motion to dismiss, the Court finds that this statement amounts to a suppression of truth intended to defraud, and one upon which Plaintiff asserts she relied to her detriment.  Compl. ¶ 45. Thus, Plaintiff has satisfactorily plead the duty element of her fraudulent concealment claim.

---

[6]    Defendant cites <u>Morgan v. Brush Wellman, Inc.</u>, 165 F. Supp. 2d 704 (E.D. Tenn. 2001) and <u>Harris v. Brush Engineered Materials, Inc.</u>, No. 04-598, slip op. at 4 (S.D. Miss. Feb. 18, 2005), in which the courts granted motions to dismiss fraudulent concealment claims because the same defendants had no duty to disclose.  These cases are inapposite, however, because neither Tennessee nor Mississippi law recognizes a duty to disclose based on partial disclosures of fact, as does Maryland law.  This distinction enables Plaintiff's claim against Defendant Brush to survive where those of plaintiffs Morgan and Harris could not.

Defendant Brush incorrectly asserts that such partial or fragmentary suppressions of truth must be made to the plaintiff to constitute fraud.  To the contrary, "Maryland law has long allowed plaintiffs to sue for injuries caused by fraudulent misrepresentations made to third parties," so long as the plaintiff could reasonably have been expected to act or refrain from action in reliance upon the misrepresentation. Maryland Nat. Bank v. Resolution Trust Corp., 895 F. Supp. 762, 772 (D. Md. 1995); contra Estate of White, 109 F. Supp. 2d at 430.[7]  Here, Defendant Brush's alleged partial disclosure and omission functions as a misrepresentation, which Plaintiff further alleges she relied upon before agreeing to work with beryllium products.  Compl. ¶ 45.[8]

---

[7]    Although Estate of White claims that Maryland law supports no fraudulent misrepresentation cause of action for statements made to third parties, both that case and the case cited in support, Parlette v. Parlette, do not rule on that basis.  Parlette v. Parlette, 596 A.2d 665, 669 (Md. App. 1991).  Both Estate of White and Parlette find for the defendants primarily due to a lack of evidence showing the plaintiffs' reliance upon the defendants' statements.  Rather than holding that Maryland law supports no fraudulent misrepresentation cause of action for statements made to third parties, Parlette in fact suggests that third parties can prevail on fraudulent misrepresentation actions so long as they are "able to prove the detrimental reliance which is so critical to a fraud claim."  Parlette, 596 A.2d at 669.

[8]    Estate of White is in accord because that court granted summary judgment primarily because Plaintiff had no evidence that he relied upon the defendants' statements. Estate of White, 109 F. Supp. 2d at 431 (stating that

13

Thus, Plaintiff has generally alleged facts upon which a valid
fraudulent concealment claim could ultimately stand.

### b.  Conspiracy

Defendants then argue that Plaintiff's civil conspiracy
claims are legally insufficient to withstand dismissal.  In
Maryland, "a civil conspiracy is a combination of two or more
persons by an agreement or understanding to accomplish an
unlawful act or to use unlawful means to accomplish an act not
in itself illegal, with the further requirement that the act
or means employed must result in damages to the plaintiff."
BEP, Inc. v. Atkinson, 174 F. Supp. 2d 400, 408 (D. Md. 2001)
(citing Green v. Washington Sub. San. Comm'n, 269 A.2d 815,
824 (Md. 1970)).  A clear agreement to conspire is necessary
because the "[i]ndependent acts of two wrongdoers do not make
a conspiracy."  Murdaugh Volkswagen, Inc. v. First Nat. Bank
of South Carolina, 639 F.2d 1073, 1076 (4th Cir. 1981).  The
conspired unlawful act does not have to be criminal, but
requires "the violation of a legal right committed knowingly
to create a cause of action."  BEP, 174 F. Supp. 2d at 409

---

defendants' statements "did not create a duty to speak . . .
because there is no evidence [Plaintiff] saw or relied on
[them] or in any other way entered a special relationship"
with the defendants).  Here, taking all inferences in
Plaintiff's favor, the Court must assume Plaintiff's
allegations that she both saw and relied on Defendant Brush's
statements are true.

14

(citing <u>Columbia Real Estate Title Ins. Co. v. Caruso</u>, 384
A.2d 468, 472 (Md. App. 1978)).  Conspiracy is not a tort on
its own, but is dependent on some underlying tort that caused
injury to the plaintiff.  <u>Estate of White</u>, 109 F. Supp. 2d at
428 (citing <u>Alexander & Alexander, Inc. v. B. Dixon Evander &
Assoc.</u>, 650 A.2d 260, 265 n.8 (Md. 1994)).

Here, Plaintiff has plead the elements of conspiracy
under Rule 8.  She has alleged two different combinations of
two or more persons conspiring to fraudulently conceal: first,
Defendant Brush and the AEC, and second, Defendant Brush and
other beryllium manufacturers.  She has also generally stated
a claim for fraudulent concealment, an underlying tort
sufficient to constitute an unlawful act.[9]  Because she
asserts her reliance on the fraudulent concealment, she has
also alleged sufficient personal damage due to the conspiracy.

---

[9]   Defendant argues that Plaintiff fails to plead an
unlawful purpose or unlawful means, an act in furtherance of
the conspiracy, or any damages to her. (Defs.' Mot. to Dismiss
at 9.)  If Plaintiff satisfactorily pleads the elements of
fraudulent concealment, however, she also will have plead each
of these elements of conspiracy.  Defendant's citation to
<u>Harris v. Brush Engineered Materials, Inc.</u> is inapposite
because the court there had dismissed the fraudulent
concealment claim.  Without that claim, the conspiracy charges
necessarily failed because they had no underlying tort to
sustain them.

Defendants argue correctly that to the extent that Plaintiff's conspiracy claims are based upon an attempt to defraud the federal government, they are preempted under Buckman Co. v. Plaintiff's Legal Comm., 531 U.S. 341, 353 (2001).  See Morgan v. Brush Wellman, 165 F. Supp. 2d 704, 722 (E.D. Tenn. 2001) (stating plaintiff's allegations that Brush defrauded an agency of the federal government conflict with the government's ability to set policy consistent with its objectives and are thus preempted).  Plaintiff's claim that Defendant Brush conspired with other beryllium processors to persuade the EPA and OSHA to reaffirm the existing standard for beryllium exposure is preempted under Buckman.

Plaintiff, however, alleges two other conspiracies in which Defendant Brush and its co-conspirators attempted to defraud beryllium workers and the public, both groups of which she is a member.  Compl. ¶ 42(a), 43.  These claims rely on traditional state tort law and are not preempted by Buckman. See Dawson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 573 (D.N.J. 2001) ("Buckman thus clarified that traditional state tort law claims . . . are not necessarily preempted" if no federal cause of action supplants them.).  Thus, Plaintiff has also generally alleged facts upon which a valid conspiracy claim could ultimately stand.

16

## 2. Rule 9(b)'s particularity requirements

While each of the claims, as explained above in Section
II-B-1, has sufficient facts to remain viable under Rule 8,
Rule 9(b) demands greater specificity than Plaintiff has
provided in her Complaint.  Each claim will therefore be
dismissed with leave to amend.

### a.  Fraudulent concealment

The parties dispute the proper application of Rule 9(b)
to Plaintiff's fraudulent concealment claim.  Defendants argue
that, even if Plaintiff has generally plead each element of
fraud, her claim does not satisfy the heightened pleading
requirement of Rule 9(b), which demands that all claims of
fraud be plead with particularity.[10]  FED. R. CIV. P. 9(b).  A
plaintiff's "lack of compliance with Rule 9(b)'s pleading
requirements is treated as a failure to state a claim under
Rule 12(b)(6)."  Harrison v. Westinghouse Savannah River Co.,
176 F.3d 776, 783 n.5 (4th Cir. 1999).  Plaintiff counters that
Rule 9(b) does not derail her claim because particularity
cannot be met in a concealment case.  Pl.'s Opp'n to Defs.'

---

[10]  Rule 9(b) states: "In all averments of fraud or
mistake, the circumstances constituting fraud or mistake shall
be stated with particularity.  Malice, intent, knowledge, and
other condition of mind of a person may be averred generally."
FED. R. CIV. P. 9(b).

Mot. to Dismiss at 9 (citing <u>Shaw v. Brown & Williamson</u>
<u>Tobacco</u>, 973 F. Supp. 539, 552 (D. Md. 1997) (stating "an
omission cannot be described in terms of the time, place, and
contents") (internal quotation and citation omitted)).

The Court sees no reason to ignore Rule 9(b)'s mandate in
this case.  Although the <u>Shaw</u> court stated that the rule's
"particularity requirements are less strictly applied" in
fraudulent concealment cases, that court applied its "relaxed
Rule 9(b) analysis" only to the plaintiff's claim of omission.
<u>Shaw</u>, 973 F. Supp. at 552.  Likewise, the supporting cases
cited in <u>Shaw</u> only find the particularity requirement
inapplicable to claims of omission of material fact.  <u>See</u>
<u>Flynn v. Everything Yogurt</u>, 1993 WL 454355, *9 (D. Md. 1993)
(stating that the "more stringent requirements of Rule 9(b) do
not apply to omissions"); <u>Bonfield v. AAMCO Transmissions,</u>
<u>Inc.</u>, 708 F. Supp., 867, 875 (N.D. Ill. 1989) (stating "an
actionable omission obviously cannot be particularized as to
'the time, place, and contents of the false representations'
or 'the identity of the person making the misrepresentation.'"
); <u>see also</u> <u>Swedish Civil Aviation Admin. v. Project</u>
<u>Management Enterprises, Inc.</u>, 190 F. Supp. 2d 785, 799 (D. Md.
2002) (finding adequate notice of fraud claim under Rules 8
and 9 due to the "thoroughness of [the plaintiff's] complaint

and the fact that [the plaintiff] did plead several instances
of alleged fraudulent behavior with specificity"). The
reasoning of <u>Shaw</u> and similar decisions, however, does not
nullify Rule 9(b)'s particularity requirement in cases like
this, where Defendant Brush's liability for fraud is
predicated on its "partial and fragmentary statement of fact,"
which presumably can be stated with particularity by
Plaintiff. <u>See</u> <u>Estate of White</u>, 109 F. Supp. 2d at 431.[11]

Although Plaintiff has generally plead the elements of
her fraudulent concealment claim, she has not plead them with
adequate particularity under Rule 9(b). Plaintiff
satisfactorily alleges the general content of Defendant

---

[11] Other district courts have found that Rule 9(b)
requires a plaintiff pleading fraudulent concealment "to
specify the context in which the omission was made and the
manner in which it misled." <u>Weaver v. Chrysler Corp.</u>, 172
F.R.D. 96, 101 (S.D.N.Y. 1997); <u>see also</u> <u>Breeden v. Richmond
Community College</u>, 171 F.R.D. 189, 195 (M.D.N.C. 1997)
(stating "even in a case of fraudulent concealment or
omission, a plaintiff must comply with the heightened pleading
requirements of [Rule] 9(b)"). The <u>Breeden</u> court elaborated
that a plaintiff making a fraudulent concealment claim
typically must allege with particularity the following: 1) the
relationship or situation creating a duty to speak; 2) the
event triggering that duty and/or the time period over which
the fraudulent conduct occurred; 3) the general content of the
omissions; 4) the identity of those responsible for failing to
disclose the information; 5) what defendant obtained through
the fraud; 6) why the plaintiff's reliance was both reasonable
and detrimental; and 7) the damages caused by her reliance.
<u>Breeden</u>, 171 F.R.D. at 195.

Brush's omissions, what it obtained through the fraud, and the damages caused by her reliance.  Plaintiff fails, however, to specify (1) the partial and fragmentary statements of fact that created a duty for Brush to speak, (2) who made the statements, (3) when the statements were made, and (4) how she came to rely on them.  To withstand dismissal, she needs to make these allegations with particularity and be especially clear about how and when she came to know of the partial disclosures noted in the Complaint and how she relied upon them.  See, e.g., Hearn v. R.J. Reynolds Tobacco Co., 279 F. Supp. 2d 1096, 1114 (D. Ariz. 2003) (stating that plaintiffs must allege with particularity how they relied on the truth of the partial statements representing fraudulent omissions).

### b.  Conspiracy

Plaintiff's conspiracy claims are similarly susceptible to dismissal.  Claims of conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirements.  Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D. Md. 2000) (citation omitted).  "The more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy."  Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc., 498 F. Supp. 510, 528 (D. Md. 1980)

(internal citations and quotations omitted); see also Odyssey
Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.
Supp. 2d 282, 297 (S.D.N.Y. 2000) ("A proper allegation of a
conspiracy to commit fraud in a civil complaint must set forth
with certainty facts showing particularly: (1) what a
defendant or defendants did to carry the conspiracy into
effect; (2) whether such acts fit within the framework of the
conspiracy alleged; and (3) whether such acts, in the ordinary
course of events, would proximately cause injury to the
plaintiff.") (citations omitted); Waller v. Butkovich, 584 F.
Supp. 909, 931 (M.D.N.C. 1984) ("Plaintiffs must expressly
allege an agreement or make averments of 'communication,
consultation, cooperation, or command' from which such an
agreement can be inferred.") (citing Weathers v. Ebert, 505
F.2d 514, 517 (4th Cir. 1974)).

Plaintiff's conspiracy claims are unable to withstand
Defendants' motion to dismiss because she has not stated the
claims' elements with the particularity required by Rule 9(b)
and because they depend on an underlying tort.  Plaintiff
alleges both named ("the United States Atomic Energy
Commission") and unnamed ("other beryllium processors") co-
conspirators and various nebulous plans to defraud various
parties (including "beryllium workers," "the public," and "the

21

EPA and OSHA") over the course of several decades.  Compl. ¶ 42(a),(c).  To withstand dismissal, for each conspiracy she must specifically allege the agreement itself, including its time, place, and the identity of the co-conspirators. Plaintiff must also allege what Defendant Brush specifically did to carry the conspiracy into effect.  Furthermore, unless and until Plaintiff's fraudulent concealment claim is rehabilitated, the conspiracy claims must be dismissed because they lack an underlying tort.

### c.  Leave to amend

Plaintiff requests leave to amend her complaint should this Court find her pleadings insufficient.  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  The Supreme Court has said that refusal of such leave, without a justifying reason, is not only an abuse of discretion but "inconsistent with the spirit of the Federal Rules."  Foman v. Davis, 371 U.S. 178, 182 (1962).  This Court will therefore grant Plaintiff leave to amend her complaint as specified in the accompanying Order.

### 3.  Punitive Damages

Defendants argue that Plaintiff has failed to state a

22

sufficient claim for punitive damages in Counts II and IV and
ask for their dismissal.  Defs.' Mot. to Dismiss at 11.
Because this Court will dismiss Count IV for failure to plead
with particularity, it will only consider the motion to
dismiss punitive damages in Count II at this time.

Plaintiff argues that her request for punitive damages
for her strict liability claim (Count II) is adequate because
she asserts that Defendant Brush either acted with certain
knowledge of the dangerousness of its product or purposely
avoided learning of its dangers in deliberate disregard of the
welfare of the product's ultimate users.  See Owens-Illinois,
Inc. v. Zenobia, 601 A.2d 633, 653 (Md. 1992) (stating that to
establish actual malice in products liability cases "plaintiff
must prove (1) actual knowledge of the defect on the part of
the defendant, and (2) the defendant's conscious or deliberate
disregard of the foreseeable harm resulting from the defect").


Maryland's standard for punitive damages, however,
requires more from the complainant.  Specifically, a plaintiff
seeking punitive damages for any tort must "allege, in detail,
facts that, if proven true, would support the conclusion that
the act complained of was done with actual malice."  Scott v.
Jenkins, 690 A.2d 1000, 1008 (Md. 1997).  Here, Plaintiff

generally alleges that Defendant Brush knowingly manufactured
and distributed a harmful product but does not include
specific factual allegations to support that charge.  Such
pleading does not satisfy Scott's requirement of "a high
degree of specificity from a plaintiff seeking punitive
damages."  Id. at 1007.  Plaintiff's claim for punitive
damages in Count II therefore will be dismissed.[12]

## III.  CONCLUSION

For these reasons, Defendant BEMI's 12(b)(2) motion to
dismiss for lack of personal jurisdiction will be granted and
Defendants' 12(b)(6) partial motion to dismiss for failure to
state a claim will be granted.  Plaintiff will be given 15
days from the date of this Order to move for leave to file an
amended complaint.  A separate order consistent with the
reasoning of this Memorandum will follow.

                                    /s/
                          William M. Nickerson
                          Senior United States District Judge


Dated: August 10, 2005


---

[12]  Of course, if subsequent discovery provides Plaintiff
with a specific factual basis that justifies a request for
punitive damages, she may move for leave to amend her
Complaint accordingly.

24