**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

REGINA K. HILL :
:
v. : Civil No. WMN-05-254
:
BRUSH ENGINEERED MATERIALS, :
INC. et al. :

**MEMORANDUM**

Before the Court are motions filed by Defendant Brush Wellman, Inc. (Brush) to Stay, Paper No. 107, for Leave to Amend Its Answer, Paper No. 111, and to Compel Discovery, Paper No. 124. Also before the Court is the motion of Defendants Pentron Laboratory Technology, LLC (Pentron) and Jensen Industry, Inc. (Jensen) to Dismiss. Paper No. 110. Each motion has been fully briefed and is now ripe for decision. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and Brush's Motion to Stay will be denied, it's Motion for Leave to Amend Its Answer will be granted, it's Motion to Compel Discovery will be denied, and Pentron's and Jensen's Motion to Dismiss will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Regina K. Hill filed suit against Defendants seeking compensation for injuries suffered as a result of an exposure to beryllium-containing dental alloys. Hill alleges that she was exposed to beryllium during her employment as a dental technician at the Roy-L Dental Lab (Roy-L) and that she contracted chronic beryllium disease due to that exposure. Defendant Brush is a manufacturer of beryllium and beryllium-

containing dental alloys. Defendants Jensen and Pentron supplied Roy-L with beryllium-containing products.[1]

Brush has filed a motion to stay all proceedings in the instant case, noting that Defendants Pentron and Jensen had entered into a separate settlement agreement with Plaintiff. In its motion, Brush alleges that Pentron has a contractual obligation to indemnify Brush against any damages, fees and expenses relating to Plaintiff's claims. That contractual relationship is the subject of litigation currently pending in the United States District Court for the Northern District of Ohio. Thus, Brush seeks a stay of these proceedings pending completion of the Ohio litigation. Shortly after Brush filed its motion to stay, Pentron and Jensen filed a joint motion to dismiss under Rule 41 of the Federal Rules of Civil Procedure, confirming that a settlement had been finalized and that Plaintiff had executed a release of her claims against them. Brush refused to consent to the stipulation of dismissal as required under Rule 41(a)(1)(ii).

Following the filing of the Motion to Dismiss, Brush moved to amend its answer to the Second Amended Complaint, seeking to add an affirmative defense making clear that it intends to seek an appropriate share of the benefit of the settlements, in accordance with the Maryland Uniform Contribution Among Joint

[1] On January 10, 2007, Pentron filed a Third-Party Complaint against Roy Levine and the Roy-L Dental Lab. Paper No. 79. The Court subsequently approved a stipulation between Pentron and Third-Party Defendants dismissing the complaint. Paper No. 127.

Tortfeasors Act (MUCATA). Md. Code Ann., Cts. & Jud. Proc. § 3-1405.[2] Additionally, Brush has filed a motion to compel discovery of the settlement agreement entered into between Plaintiff and Pentron and Jensen, arguing that any such agreement would be highly relevant to damages, the value of Plaintiff's remaining claims, and to the credibility or bias of the settling parties.

**II. DISCUSSION**

A. Motion to Stay

The Court has the inherent power to stay proceedings to "achieve equity and ensure the efficient management of its docket." John and Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc., 335 F. Supp. 2d 614, 633 (M.D.N.C. 2004) (citing, inter alia, Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)). In determining whether to issue a stay, the Court "must weigh competing interests [of the parties] and maintain an even balance." Id. (internal quotations omitted). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Id.

In its motion to stay, Brush alleges that it stands to

[2] Section 3-1405 provides: "A release by the injured person of one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release: (1) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and (2) Provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors."

suffer undue hardship if this action continues prior to the resolution of the Ohio litigation. Brush's allegation of potential hardship is based, primarily, on its contention that the type of settlement entered into between Plaintiff and Defendants Pentron and Jensen, a so-called Swigert release, creates an additional burden on Brush to affirmatively show that Pentron and Jensen were tort-feasors. When parties enter into a Swigert release, judgment against a non-settling defendant is not automatically reduced unless the non-settling defendant shows that the settling defendants were joint tort-feasors. Swigert v. Welk, 133 A.2d 428, 431-33 (Md. 1957). Courts addressing Swigert releases have found that proceeding by affirmative defense is the proper method for the non-settling defendant to protect his or her right to contribution under the MUCATA. See Montgomery County, Md. v. Jaffe, Raitt, Heuer & Weiss, P.C., 897 F. Supp. 233, 240 (D. Md. 1995) (noting that the proper way for a trial to proceed following the non-settling defendant's assertion of an affirmative defense is "with the [plaintiff] seeking to establish that [non-settling defendant] bears a major share of liability and with [non-settling defendant] defending by seeking to establish the major portion of the damage resulted from the acts of [other defendants].") (quoting Quintel Corp. N.V. v. Citibank, N.A., Nos. 80-CIV-4963, 82-CIV-4856, 1983 WL 2157 at *2 (S.D.N.Y. Dec. 28, 1983)). Brush further contends that, should it be forced to subpoena documents or witnesses under Pentron's control, this Court would be required to interpret Pentron's

indemnification certificate, thus duplicating the litigation currently underway in Ohio.

The Court finds that any hardship suffered by Brush as a result of Plaintiff's entry into Swigert release with Jensen and Pentron can be alleviated by allowing Brush to amend its complaint to fully assert any necessary affirmative defenses. Jaffe, 897 F. Supp. at 240. Further, the scope of Pentron's obligations to Brush under their indemnification agreement is not currently an issue pending before this Court as Brush has not filed any cross claims against any of its co-Defendants in the instant suit. Thus, to the extent that Brush believes it has a cause of action against Pentron arising out of a contractual duty of indemnification, such a claim would be appropriately asserted independently of the instant suit, or in the Ohio litigation. The Court, therefore, will deny Brush's motion to stay the instant proceedings.

B. Motion for Leave to File Amended Answer

In its Motion for Leave to Amend Its Answer, Brush notes that its Answer to the Second Amended Complaint contains two affirmative defenses alleging entitlement to a credit or offset based on any recovery from other parties. Brush has filed the motion for leave to amend, however, because those defenses do not specifically reference the MUCATA and are not specifically tailored to the circumstances of the settlement. Plaintiff interprets Brush's Motion for Leave to Amend as an attempt by

Brush to seek an automatic credit for the settling-defendants' payments. Pl. Opp'n to Mot. to Am. 1-2. Because Plaintiff's entry into a Swigert release with Jensen and Pentron does not provide Brush with a right to an automatic credit, Plaintiff opposes Brush's motion by arguing that amendment is unnecessary.

As stated above, proceeding by affirmative defense is the proper method for the non-settling defendant to protect his right to contribution where the settling parties have entered into a Swigert release. Jaffe, 897 F. Supp. at 240. To ensure that Brush has an opportunity to protect its MUCATA rights, the Court will grant Brush's Motion for Leave to Amend. See Fed. R. Civ. P. 15(a) ("a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.").

C. Motion to Dismiss

Defendants Pentron and Jensen, having entered into a settlement agreement with Plaintiff, have moved to dismiss Plaintiff's claims against them, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Brush, however, has refused to consent, thus, dismissal will require an order of the Court, pursuant to Rule 41(a)(2). See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2364 (2d ed. 1995). The Court may impose terms and conditions on such a dismissal. Id. Under Rule 41(a)(2), the Court may allow voluntary dismissals unless the parties will be unfairly prejudiced. Davis v. USX,

819 F.2d 1270, 1273 (4th Cir. 1987). Generally, "denial of a motion for voluntary dismissal must be accompanied by a finding of unfair, or 'substantial prejudice' to the defendant." Dean v. WLR Foods, Inc., 204 F.R.D. 75, 77 (W.D. Va. 2001).

Here, Brush alleges that entry of dismissal would violate Pentron's contractual obligations to Brush and otherwise cause undue hardship by forcing Brush to affirmatively show that Pentron and Jensen are joint tort-feasors. Brush requests that the Court, as a condition of approving the dismissal, require that the settling parties renegotiate the terms of their settlement to provide for a so-called Griffin release,[3] or to include a general release of Plaintiff's claims against Brush.

As stated above, the Court finds that any legal hardship suffered by Brush resulting from Plaintiff's entry into a Swigert release with Jensen and Pentron can be alleviated through Brush's inclusion of certain affirmative defenses in its answer. See Jaffe, 897 F. Supp. at 239-40. Further, the scope of the Brush-Pentron indemnification agreement is not currently pending before this Court. Thus, the Court finds that Brush has failed to establish that dismissal of Plaintiff's claims as to Pentron and Jensen would result in substantial prejudice.

D. Motion to Compel

[3] Under a Griffin release, the settling party does not admit to liability, but acknowledges its status as a joint tort-feasor, thereby allowing for an automatic reduction in the liability of the non-settling party. See Jones v. Hurst, 459 A.2d 219, 222 (Md. Ct. Spec. App. 1983) (discussing Griffin v. United States, 500 F.2d 1059 (3d Cir. 1974)).

The scope of discovery is governed by Rule 26(b)(1) of the Federal Rules, which limits discovery to matters "relevant to the claim or defense of any party[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Relevancy with respect to the discovery standard should be construed broadly. Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D.W.Va. 2000). Courts have employed different standards in addressing the issue of discoverability of settlement agreements. Some courts require a "particularized showing" by the party seeking discovery that the agreement will lead to admissible evidence, while others have found that the opponent of discovery carries the burden of showing that the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Compare, e.g., Young v. State Farm Mut. Auto. Ins. Co., 169 F.R.D. 72, 79 (S.D. W. Va. 1996) (noting that, because Congress intended to exclude certain items of evidence, the burden should be placed upon the proponent of discovery to make some "particularized showing" of a likelihood that admissible evidence will be generated by discovery); with Bennett v. La Pere, 112 F.R.D. 136, 139-40 (D.R.I. 1986) (rejecting the "particularized showing" requirement and placing the burden on the opponent of discovery to show that the information sought is not likely to lead to the discovery of admissible evidence). Here, the Court finds that, under either standard, discovery of

the content of the settlement agreement is not warranted.

In its Motion to Compel, Brush first argues that discovery of the settlement agreement will provide it with the ability to evaluate Plaintiff's remaining claims and to determine litigation strategy. Brush argues that the settlement amount recovered by Plaintiff is relevant because, if Plaintiff establishes Brush's liability at trial and Brush successfully establishes that Pentron and Jensen were joint tort-feasors, then Brush's liability may be offset by the greater of (1) Pentron and Jensen's settlement payment, or (2) the proportion by which the release provides that the claim shall be reduced. See Md. Code Ann., Cts. & Jud. Proc. § 3-1404.[4] Thus, Brush contends that knowledge of the settlement amount will illuminate the risks of proceeding to trial and "could even cause Brush to forgo trial altogether and instead enter into settlement negotiations with plaintiff." Mot. to Compel 8.

While information regarding the settlement amount may be helpful to Brush in its evaluation of what resources it might devote to trial, Brush has failed to show that the information "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The value of

[4] Section 3-1404 provides: "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but it reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

Plaintiff’s claims arises from evidence with respect to her injury, medical expenses, lost wages, and other damages. Brush’s knowledge of the settlement amount does not alter the value of those claims. Brush correctly asserts that the settlement amount may become relevant under the MUCATA if it is greater than the pro rata share of the settling tort-feasors, however, that issue will not arise unless there is a verdict against Brush. See Porter Hayden Co. v. Bullinger, 713 A.2d 962, 966 (Md. 1997) (noting that, under the MUCATA, "[a]lthough the amounts of the negotiated settlements may have been irrelevant in the pre-trial stage, once the verdicts were rendered against petitioners, the amounts of the settlement agreements became relevant in determining the apportionment of damages").

Brush next argues that the content of the settlement agreement is discoverable because it is relevant to establishing the credibility or bias of Plaintiff and settling-Defendants. Brush contends that Jensen and Pentron may have paid a substantial sum to gain Plaintiff’s cooperation at trial in proving that they are not joint-tortfeasors and that they might be motivated to slant their testimony at trial in a manner that would prejudice Brush. While some courts which have addressed the issue of the discoverabilty of confidential settlement agreements have found that discovery is appropriate where an allegation of bias has been raised, several others have held that merely establishing the existence of a settlement agreement provides sufficient information from which the jury may infer the

bias of the potential witnesses. Compare, e.g., Burda Media, Inc. V. Blumberg, No. 97-CIV-71756, 1999 WL 413469, at *4 (S.D.N.Y. June 21, 1999) (affording non-settling defendants access to confidential settlement materials where those defendants asserted that information derived therefrom would be relevant to the settling parties' bias, interest, or prejudice) with Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453, 461 (N.D.N.Y. 1999) (noting that "the fact of settlement, without going into details regarding the Agreement, would be sufficient to impeach [the settling-defendant's] credibility[.]"). Unlike Burda Media, Inc., here, Brush has not shown that either of the settling-Defendants is likely to be a significant fact witness at trial. Further, notification of the existence of a settlement agreement would likely provide sufficient information upon which the fact-finder could evaluate the bias of the settling-defendants. See also Flynn v. Portland Gen. Elec. Corp., No. 88-455-FR, 1999 WL 112802, at *2 (D. Or. Sept. 21, 1989) (noting that "the strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated"). Thus, the Court finds that, in the instant case, disclosure of the content of the settlement is not necessary for impeachment purposes.

**IV. CONCLUSION**

For these reasons, Brush's Motion to Stay will be denied, it's Motion for Leave to Amend Its Answer will be granted, it's Motion to Compel Discovery will be denied, and Pentron's and

Jensen's Motion to Dismiss will be granted. A separate order consistent with this Memorandum will follow.

/s/

William M. Nickerson
Senior United States District Judge

Dated: June 14, 2007